UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RONALD NICHOLS,

    Plaintiff,

       v.                              CAUSE NO. 3:25-CV-597-HAB-ALT

SCOTT RUSZKOWSKI, et al.,

    Defendants.

OPINION AND ORDER

Ronald Nichols, a prisoner without a lawyer, filed an amended complaint. ECF 13. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Nichols is suing about events that happened on August 23, 2023. He claims he was sitting in his significant other's car using his cellphone when he was "startled" by officers from the South Bend Police Department. ECF 13 at 5. His "body jumped involuntarily," which caused him to "seize up out of momentary disorientation." *Id*. He says he never intended to harm anyone, but, at some point, he ended up on the ground being held down by several officers. Nichols maintains he "wasn't fighting or a threat,"

but he implies a scuffle ensued when the officers were attempting to get him to comply. *Id*. Officer Steven Spadafora struck him twice in the face with a closed fist. *Id*. Nichols insists Officer Spadafora could "just as easily used pepper spray or taser" instead of his fist. *Id*. He believes "it would have been the humane thing to do to taze or spray me" as they were trying to get his arms behind his back. *Id*. at 6. Nichols was arrested for "guns and drug dealing," but the charges were eventually dismissed. *Id*. at 5.

Nichols also alleges Supervising Officer Brandon Schmidt made inconsistent statements in his report.[1] Specifically, Officer Schmidt stated the handgun was found on the seat of the car, but photographic evidence showed the handgun was "holstered on the floorboard passenger side." *Id*. Nichols takes issue with the fact that Officer Schmidt downplayed the nature of his injuries by stating he had a "slight abrasion over his eye" that was "bleed[ing] a little" and that the medics described it as "superficial." *Id*. at 6. Nichols points out that he sustained a broken nose.

Nichols asserts the South Bend Police Department spread "misinformation and unsubstantiated claims contrary to [his] nature" against him via their police reports. *Id*. at 4. He says this was "defamation of character," but he admits he doesn't know "how far these defamatory claims have spread." *Id*. He further believes Officer Spadafora defamed him by referring to him as "violent" in his report even though Nichols says he has never "used a weapon violently nor assaulted an officer." *Id*. Similarly, he believes Officer Schmidt defamed him by referring to him in his report as being "known for

---

[1] He doesn't say if this was the probable cause affidavit or some other report.

selling guns and drugs" when he has never been convicted of either offense. *Id*. at 6. Nichols has sued South Bend Police Chief Scott Ruszkowski, South Bend Mayor James Mueller, the City of South Bend, Officer Steven Spadafora, and Officer Brandon Schmidt for monetary damages.[2] He also seeks injunctive relief in the form of "therapy provided for this trauma." *Id*. at 9.

Excessive-force claims that occur during the course of an arrest or apprehension of a suspect "are governed by the Fourth Amendment's 'reasonableness' standard, which turns on the totality of the circumstances confronting [the officers] viewed from the perspective 'of a reasonable officer on the scene . . ..'" *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 396 (1989)). "Whether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Id*. (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012)). In analyzing these claims, the court must "consider the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Bayon v. Berkebile*, 29 F.4th 850, 854 (7th Cir. 2022) (internal quotation marks and citations omitted). Even the use of deadly force may be reasonable if an officer has

---

[2] He also references Officer Gabriel Thom, Officer Jalin Diggins, Officer Damon Lim, Officer Jeffery Vance, and Lieutenant Kyle Dombrowski as being "involved" in the incident. ECF 13 at 6–7. Other than Lieutenant Dombrowski—whom he says submitted a photograph showing the gun was "holstered on the floorboard passenger side" (*id*. at 5)—these individuals aren't mentioned anywhere in the body of the amended complaint. Additionally, in his "motion to amend" included with his amended complaint, he states he "wish[es] to withdraw" these officers. *Id*. at 2. These defendants will be dismissed.

probable cause to believe the suspect is armed and poses a threat of physical harm or is about to escape. *See Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020). The perspective as viewed from a reasonable officer on the scene is critical. *Id.*

> [A] court must consider the amount and quality of the information known to the officer at the time. In seeking to understand the perspective of the officer on the scene, we must consider: the information known to the officer at the time of the encounter; the duration of the encounter; the level of duress involved; and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances. Law enforcement officers on the scene do not have the luxury of knowing the facts as they are known to us, with all the benefit of hindsight, discovery, and careful analysis. Officers must act reasonably based on the information they have. We must always keep in mind that encounters in the field require officers to make split-second decisions of enormous consequence. If a reasonable officer in [the defendant's] shoes would have believed that [the plaintiff] posed an imminent threat of serious physical harm, or that he had committed a crime involving serious physical harm and was about to escape, the Officer's use of force was reasonable.

*Id.* (brackets, internal quotation marks, and citations omitted).

Here, Nichols claims he was sitting in a car when it was suddenly surrounded by South Bend police officers. He says he wasn't resisting, but he admits he was ordered out of the car and that there was a scuffle during which he was punched in the face by Officer Spadafora. Additional tidbits are sprinkled throughout the amended complaint—a gun was found in the car, the tinted windows were "extremely dark," Nichols admits his body "jumped involuntarily" which Officer Spadafora described as "furtive movements"—but it's unclear what led up to the interaction or what exactly occurred during it. Without additional details, the court is unable to analyze the totality of the circumstances. Vague and conclusory allegations, devoid of supporting details, are insufficient to state a claim. "[A] complaint must plead more than an unadorned,

the-defendant-unlawfully-harmed-me accusation. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. . . . [W]hen considering the viability of a claim . . ., we may reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Intl. Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (internal quotations marks and citations omitted); *see also Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility.") (citing *Ashcroft*, 556 U.S. at 678) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")). Thus, Nichols's amended complaint fails to state a plausible excessive force claim against Officer Spadafora.

Nichols has sued Police Chief Ruszkowski, but he doesn't attribute any actions to him. Instead, he says he is doing so because Police Chief Ruszkowski is the "Rule Decision provider" (ECF 13 at 3) to all South Bend police officers. However, there is no *general respondeat* superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *see also Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)). Similarly, he has sued Mayor James Muller and the City of South Bend administrators for appointing Chief Ruszkowski, but these allegations don't state a plausible claim either. *See J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020) (vicarious liability does not attach simply because a municipal entity employed an individual who violated the Constitution); *see also Flores*

*v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) ("Municipalities do not face *respondeat superior* liability under section 1983 for the misdeeds of employees or other agents. Only actions of the entity will suffice.") (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). These claims will be dismissed.[3]

Finally, Nichols alleges Officer Spadafora and Officer Schmidt defamed him by including "misinformation" in their police reports. Defamation is a state law claim that triggers application of the Indiana Tort Claims Act (ITCA). IND. CODE § 34-13-3 *et seq.* The ITCA prohibits tort suits against government employees personally for conduct within the scope of their employment. *See* IND. CODE § 34-13-3-5(b); *see also Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016) ("[T]he Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment."); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). "If an alleged action is within the general scope of an individual's authority, it is authorized within the meaning of the Tort Claims Act, regardless of whether it was done negligently or with improper motive." *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1033 (N.D. Ind. 2014) (cleaned up). Drafting police reports unquestionably falls within the scope of the

---

[3] Nichols also says he wishes to add the South Bend Police Department as a defendant because its officers spread "misinformation and unsubstantiated claims "against him via their police reports. ECF 13 at 4. Even putting aside the sparsity of these allegations, he hasn't stated a viable claim against the South Bend Police Department because it is not a suable entity for purposes of 42 U.S.C. § 1983. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[T]he Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued.").

officers' employment, so, under state law, they are both shielded from personal liability. *Ball*, 760 F.3d at 645.

The ITCA does, however, permit a litigant to sue an individual's employer, which in this instance would be the City of South Bend rather than the South Bend Police Department. *See* IND. CODE § 34-13-3-5(b); *see also Sow*, 636 F.3d at 300 ("[T]he Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued."). To establish defamation, a plaintiff must prove the existence of: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Dugan v. Mittal Steel,* 929 N.E.2d .184, 187 (Ind. 2010). Here, Nichols alleges Officer Spadafora's police report referred to him as being "violent" and describes him as being apprehended for "guns and drug dealing." ECF 13 at 5. He also alleges Officer Schmidt reported that Nichols was "known for selling guns and drugs." *Id*. at 6. However, Nichols doesn't provide the full statements or even describe the manner in which they were allegedly published other than to say they were in police reports. Without additional context, these allegations are far too sparse to state a claim. *Taha, Loc. 781*, 947 F.3d at 469 (complaint fails to state a plausible claim "if it tenders naked assertions devoid of further factual enhancement"); *Schillinger*, 954 F.3d at 994 (complaint "must include adequate factual detail to lift his claims from mere speculative possibility to plausibility"); *see also Webster v. City of Indianapolis*, No. 1:10-CV-1622-SEB-DML, 2012 WL 4467558, at *7–9 (S.D. Ind. Sept. 26, 2012) (collecting Indiana defamation cases and finding "police report was, and is, protected by a qualified privilege").

Furthermore, a claim against a political subdivision is barred unless proper notice is filed within one hundred eighty days of the incident in accordance with IND. CODE § 34-13-3-8. "Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must prove and which the trial court must determine before trial." *Alexander v. City of S. Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003) (quoting *Davidson v. Perron,* 716 N.E. 2d 29, 34 (Ind. Ct. App. 1999). Nichols does not mention filing a timely tort claim notice and, based on his sparse allegations, it is not plausible to infer that he did. Therefore, he may not proceed on his state law defamation claims either.

This complaint does not state any claims for which relief can be granted. If Nichols believes he can state a claim based on (and consistent with) the events described in this complaint, he may file a second amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form. Nichols must include adequate details about the events at issue, including his criminal case number and/or information about it, plus the full context of the allegedly defamatory statements.

For these reasons, the court:

(1) GRANTS Ronald Nichols until **August 31, 2026**, to file an amended complaint; and

(2) CAUTIONS Ronald Nichols if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims for which relief can be granted

SO ORDERED on August 3, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT